[No. 36603.    Department Two.    January 9, 1964.]

CLARENCE M. JOLLY, *Respondent,* v. LLOYD A. FOSSUM *et al., Appellants.*

CLARENCE M. JOLLY, *Respondent,* v. VALLEY PUBLISHING COMPANY *et al., Appellants.**

*Reported in 388 P. (2d) 139.

*Garvin, Ashley & Foster* and *Daniel J. Riviera,* for appellants.

*James J. Keesling,* for respondent.

WEAVER, J.—Defendants appeal from a judgment entered after a jury verdict in the trial of consolidated cases involving the two-pronged law of defamation.

The first action against defendant Fossum is based upon alleged slanderous statements made to a deputy prosecuting attorney of King County concerning plaintiff's alleged unauthorized use of property of the town of Pacific, where he was the electric light superintendent and lineman. April 11, 1956, a criminal complaint was filed against plaintiff charging him with "misconduct of a public officer"; plaintiff was never arrested. December 18, 1957, the criminal charge was dismissed by the prosecuting attorney.

The second action against defendants Crew and the Valley Publishing Company is based upon an alleged libelous newspaper article published in the April 26, 1956 issue of the Auburn Globe-News.

Later in this opinion we will set forth further facts as they become necessary to a discussion of the particular point under consideration. Additional facts, including the newspaper article, appear in our former opinion in which we reversed a summary judgment for defendants on the ground that the record raised genuine issues of material facts that should have been presented to a jury. *Jolly v. Fossum,* 59 Wn. (2d) 20, 365 P. (2d) 780 (1961).

"Malice," the nub of the assignments of error in both actions, orbits in the field of the law of defamation in this state with at least three varying connotations, each applicable in different categories.

In the first category, malice is used in the sense that it is implied when a defamatory statement is, as a matter of law, said to be slanderous or libelous per se; the statement conveys a defamatory meaning without resort to extraneous facts. *Grein v. LaPoma,* 54 Wn. (2d) 844, 340 P. (2d) 766 (1959) ("You are a Communist") is illustrative.

" . . . In any such sense as this, 'malice' becomes a bare fiction." Prosser, Torts (2d ed.) 602.

In *Byrne v. Funk,* 38 Wash. 506, 80 Pac. 772 (1905), the court held that malice was not a necessary element of *actionable* libel in this jurisdiction.

The second sense in which malice is discussed is that its presence is claimed to eliminate the defenses of qualified privilege and fair comment. Of this situation, one authority said:

" . . . the qualified privilege will be lost if the defendant publishes the defamation in the wrong state of mind. The word 'malice,' which has plagued the law of defamation from the beginning, has been much used in this connection, and it frequently is said that the privilege is forfeited if the publication is 'malicious.' *It is clear that this means something more than the fictitious 'legal malice' which is 'implied' as a disguise for strict liability in any*

*case of unprivileged defamation. . . ."* (Italics ours.) Prosser, Torts (2d ed.) 627.

*Farrar v. Tribune Pub. Co.,* 57 Wn. (2d) 549, 358 P. (2d) 792 (1961) illustrates the third connotation of malice in the law of defamation. The court said:

"The issue then narrows to whether the existence or absence of malice can have an effect either to enhance or decrease the actual damages suffered by the party defamed."

It is helpful to keep in mind that legal malice may be implied as a disguise for strict liability in case of unprivileged defamation; malice may defeat the defenses of qualified privilege and fair comment; its presence or absence may affect damages recoverable.

We recognize that malice cannot be defined in terms that will automatically resolve every case, nor can it always be classified with precision; however, clarity is not promoted when the decided cases discussing malice in one category are used as authority in another.

*The slander action against Fossum*

March, 1956, defendant Fossum was elected mayor of the town of Pacific, but pursuant to the existing law, did not take office until June. In the interim, he attended several council meetings. At least two matters of town business disturbed him and two members of the town council: the alleged use of the town truck by plaintiff after the council had cancelled his right to use it in his personal business (whether he used it is a disputed fact); and the council's sale to plaintiff of 2900 pounds of copper for $1. Plaintiff later resold the copper for approximately $1150.[1] This was an alleged attempt to compensate plaintiff for engineering services performed in addition to his regular duties.

After a meeting with some of the town council, defendant Fossum interviewed a deputy prosecuting attorney of King

[1]After plaintiff left his employment with the town of Pacific, the state filed an action against him and three of the town council based upon the copper sale. Plaintiff paid $500 in settlement; the action was dismissed; the town of Pacific received the settlement money.

County. He had several subsequent meetings at the request of the deputy. These conversations are the basis of plaintiff's slander action against defendant Fossum. We mentioned previously that criminal charges were commenced by the deputy prosecuting attorney against plaintiff, but later dismissed.

■ The principal defenses to an action for defamation are truth, consent, absolute privilege, qualified or conditional privilege, and fair comment or privileged criticism. See *Gaffney v. Scott Pub. Co.*, 41 Wn. (2d) 191, 193, 248 P. (2d) 390 (1952); 3 Restatement, Torts § 583 *et seq.*; Brennan, "An Outline of the Law of Libel in Washington," 30 Wash. L. Rev. 36, 41 (1955).

The instant case concerns the defense of qualified or conditional privilege of statements made to a prosecuting attorney.

In *Owens v. Scott Pub. Co.*, 46 Wn. (2d) 666, 674, 284 P. (2d) 296 (1955), this court defined qualified or conditional privilege.

"On certain occasions one is qualifiedly or conditionally privileged to publish false and defamatory matter of another and is not liable therefor, provided such privilege is not abused. Facts contained in such communication need not be true, if published without malice, in good faith, and in an honest belief of their truth arrived at after a fair and impartial investigation or upon reasonable grounds for such belief. 3 Restatement of the Law of Torts 241 to 260, §§ 593 to 598. These occasions arise when the publication is for the protection of the interest of the publisher, *Fahey v. Shafer*, 98 Wash. 517, 167 Pac. 1118; the recipient or a third person, *Ecuyer v. New York Life Ins. Co.*, 101 Wash. 247, 172 Pac. 359; persons sharing a common interest, *Chambers v. Leiser*, 43 Wash. 285, 86 Pac. 627; *Ward v. Painters' Local Union*, 41 Wn. (2d) 859, 252 P. (2d) 253; family relationships, *Kimble v. Kimble*, 14 Wash. 369, 44 Pac. 866; public interest, *Stevens v. Haering's Grocetorium*, 125 Wash. 404, 216 Pac. 870. In connection with the last mentioned type of privilege the publication is privileged only when made to a public officer or a private citizen who is authorized to act. The privilege does not extend to a publication to the entire public. . . . "

■ While there is authority indicating that public policy requires that statements made *to* a prosecuting attorney are absolutely privileged,[2] the majority of the cases hold that the privilege is qualified or conditional, not absolute.[3] The statements must be made "without malice, in good faith, and in an honest belief of their truth arrived at after a fair and impartial investigation or upon reasonable grounds for such belief." But the privilege cannot be abused. For example, in *Stevens v. Haering's Grocetorium*, 125 Wash. 404, 216 Pac. 870 (1923), the court said:

" . .. . we find evidence in the record from which the jury might find that the statement to the police officers was made in a loud and unduly harsh manner, over a telephone located in a public market, and within the hearing of many."

The rule is succinctly stated in 3 Restatement, Torts § 598.

"An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

"(a) facts exist which affect a sufficiently important public interest, and

"(b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true."

■ Decisions in this jurisdiction recognizing the defense of qualified privilege are cited in the quotation from *Owens*, *supra*. It is the universal rule that defamatory statements lose their conditional privileged character upon proof of actual malice.

The rule dispositive of the instant case is found in *Fahey v. Shafer*, 98 Wash. 517, 522, 167 Pac. 1118 (1917), wherein this court said:

---

[2] *Vogel v. Gruaz*, 110 U.S. 311, 28 L. Ed. 158, 4 S. Ct. 12 (1884); 3 Restatement, Torts § 587, comment (b). It is of interest to note that this court, in *Stivers v. Allen*, 115 Wash. 136, 196 Pac. 663, 15 A.L.R. 245 (1921), held that defamatory words addressed *by* a United States district attorney to one suspected of a criminal offense, made in the presence of a secret service officer charged with the investigation of such offenses were *absolutely privileged*.

[3] The cases are collected in an annotation, "Libel and slander: privilege regarding communications to police or other officer respecting commission of crime." 140 A.L.R. 1466.

" . . . where a communication is prompted by a duty to the public or . . . to another having a corresponding interest, it is privileged if made in good faith and without malice. [authorities cited]

"In this state malice is not ordinarily an essential element in the civil action for damages for libel or slander. [authority cited] But this is not true in cases involving the qualified privilege. *In such cases, actual malice must be proved before there can be a recovery.* This follows from the very nature of the privilege, which in itself is a complete defense in the absence of malice. *The burden in such cases is upon the plaintiff to prove the existence of malice.* [authorities cited] Whether a statement, if made in good faith and without malice, is privileged is a question for the court. But if there is any evidence reasonably tending to show actual malice, the plaintiff has the right, notwithstanding the privileged character of the communication, to have the question of malicious excess of privilege submitted to the jury upon such evidence. [authorities cited] Where the qualified privilege exists and the court can see that the language used will warrant no inference of malice, *and there is no other proof of malice, it is the duty of the court to grant a nonsuit.* [authorities cited]" (Italics ours.)

Plaintiff argues: (1) defendant Fossum's oral statements to the deputy prosecuting attorney were untrue, were slanderous per se, and malice is presumed; (2) this malice defeats the defense of qualified privilege; (3) therefore, defendant Fossum is not entitled to a dismissal of the action for slander.

We do not accept the accuracy of plaintiff's syllogism. He is attempting to defeat the defense of qualified privilege by using the "fictitious 'legal malice' which is 'implied' as a disguise for strict liability in any case of unprivileged defamation." Proof of falsity *alone* is not conclusive of malice that automatically destroys the defense of qualified privilege of statements made to a prosecuting attorney. The authorities require that malice be proved in order to defeat the defense. *Fahey v. Shafer, supra.* If plaintiff's argument that the statements must be true before the defense of qualified privilege is available, then the defense of truth would apply and there would be no defense of qualified privilege.

We have studied the testimony of defendant Fossum and the deputy prosecuting attorney. We cannot say that the language used by Mr. Fossum in his conversations with the deputy warrants the inference of malice.

Was there any other *evidence of malice* sufficient to take the case to the jury on the question of malice?

It is easier to illustrate and prove the affirmative than the negative. The main thrust, however, of plaintiff's argument is that Fossum failed to disclose to the deputy prosecuting attorney certain of his business relations with the town. This argument is not persuasive for two reasons: first, the deputy did not testify that Fossum did not tell him of these matters; he testified:

". . . I cannot say that he didn't tell me; but if so, it didn't appear important to me because I have no present recollection of it."

second, Fossum's business relations with the city are irrelevant for there is no evidence that plaintiff had anything to do with the matters involved.

We have examined the record carefully. Defendant Fossum has established the defense of qualified privilege. There is no evidence of malice to defeat the defense.

The judgment against defendant Fossum is reversed with instruction to dismiss the action for slander. He will recover one half of the costs on appeal.

### The Action for Libel

Plaintiff's action for libel is against the Valley Publishing Company, a corporation, owner of the Auburn Globe-News, a weekly newspaper, and Donald M. Crew, its associate publisher. The jury returned a verdict in favor of plaintiff.

April 11, 1956, criminal charges, which were later dismissed, were filed against plaintiff. The following day, the first of eight front-page, weekly newspaper articles concerning plaintiff and his relation with the town was published in the Auburn Globe-News. Plaintiff's action is based specifically upon the article of April 26, 1956, which is set forth verbatim in *Jolly v. Fossum*, 59 Wn. (2d) 20, 365 P. (2d) 780 (1961), and which a jury could find is defamatory of plaintiff.

Although the article upon which this action is based purports to quote defendant Fossum, the court instructed that he was

". . . not responsible for any of the newspaper articles that are in evidence or for any of the statements made therein, there having been no proof or evidence connecting them therewith."

Defendants made three assignments of error in the libel action: (1) Instruction 14, defining malice, should not have been given because there was no evidence of malice; (2) the court refused to give defendants' requested instruction 8, which reads as follows:

"There is no evidence in this case suggesting that the defendants were actuated in publishing the article in question out of any malice or ill will towards the plaintiff. Therefore, you will eliminate any consideration of malice in your deliberations."

and (3) the court failed to grant defendants a new trial.

■■ Whatever the rule may be elsewhere, the rule in this jurisdiction was established by a sharply divided court in *Owens v. Scott Pub. Co.*, 46 Wn. (2d) 666, 284 P. (2d) 296. (1955). This court held that a published imputation of misconduct in public office, if false, is a libel as a matter of law and that in order to be privileged, a libelous criticism or comment concerning a public official must be based on true facts. If based on true facts, the criticism or comment may be severe, vehement, exaggerated, or even ridiculous so long as the criticism or comment does not expose a living person to hatred, or contempt. This decision was affirmed in *Lamanna v. Scott Pub. Co.*, 48 Wn. (2d) 683, 296 P. (2d) 321 (1956).

In the instant case, instruction No. 13, which presents defendants' theory of fair comment, points out that the defense is available only if the ". . . opinions and criticism were made *without malice.*" (Italics ours.) The challenged instruction No. 14 defines malice.

The crux of defendants' assignments of error is whether, in the circumstances of the instant case, it was reversible error to give instruction 14.

We think it was not error.

■ In the absence of special interrogatories to the jury, as used in *Lamanna, supra,* we consider the only two possibilities consistent with the jury's verdict.

First, the jury found the facts stated in the article to be false and defamatory; hence, fair comment would not be available as a defense under the rationale of *Owens, supra,* and the instruction defining malice would be superfluous.

Second, the jury found the facts of the article to be true, but the article itself illustrated an abuse of fair comment, which cannot be correctly defined without defining malice, a function fulfilled by instruction 14.

The judgment against the Valley Publishing Company and Donald M. Crew is affirmed. Plaintiff will recover one half his costs on appeal against these defendants.

It is so ordered.

OTT, C. J., FINLEY, and HAMILTON, JJ., concur.

DONWORTH, J. (concurring)—I concur in opinion relating to the slander case. As to the libel case, I concur in the result because until *Owens v. Scott Pub. Co., supra,* is overruled I am bound by the majority decision in that case.